## RAINES *v.* HARRIS.

Considering all the evidence in this case, which was a habeas-corpus proceeding to obtain possession of a minor child, it does not appear that the court abused his discretion in awarding the custody of the child to the petitioner, who is the mother.

No. 1630. APRIL 14, 1920.

Habeas corpus. Before Judge Searcy. Upson superior court. May 21, 1919.

Martha J. Harris, the widow of Thomas J. Harris, brought habeas corpus against William Raines, to secure possession and custody of Roxie Harris, her daughter, who was fifteen years of age. Thomas J. Harris died in 1918, having been killed by parties unknown. Decedent left a will appointing William Raines as the testamentary guardian of his daughter, Roxie Harris. Thomas J. Harris and his wife were living in a state of separation at the time of his death, and had been so living for several years. At the hearing there was evidence to show that both the petitioner and the respondent were fit custodians of the minor child. The evidence in favor of the respondent was especially strong. An affidavit was submitted at the hearing, made by Roxie Harris, stating that she had been well treated from the time that she went to the home of her guardian, not only by the guardian but by his father and his sisters with whom he lived; that she was satisfied with her home and did not desire to change it. She stated further that she had been charged with the killing of her father, was tried for it, and was acquitted; that before her trial she told her guardian how the killing occurred, who was responsible for it, and who induced her to do the killing; that her guardian, William Raines, had never objected to her speaking to her mother and to her brothers and her sisters; and that she desired to remain in the custody and control of her guardian and did not wish to go with her mother. There was other evidence relating to the confinement of Roxie Harris in jail, charged with the murder of her father, and of her guardian having cared for her and having employed lawyers to defend her; which defense was successful, she having been acquitted. The mother testified also that she tried to see her daughter while she was confined in jail, but was refused admission.

When the introduction of evidence was concluded the judge of the superior court, hearing the case, announced that he would award the custody of the girl to her guardian, William Raines. But before the judgment was signed by the court Roxie Harris, who was present in the court room, began to cry; and being called forward by the judge and asked what was the matter, she told him that she wanted to go to her mother, as she thought her

mother was the person who should have her; that she had signed the affidavit which had been read in evidence by the respondent, and that it was in part the truth, but that she would rather go with her mother; that she was not well treated by members of her guardian's family — his sisters; and that the affidavit in this respect was not true. The court then took the matter under advisement, and several weeks later rendered his judgment awarding the custody of the minor child to the petitioner, the mother, stating in the judgment that it appeared from the evidence that the welfare of the child would be best promoted by leaving her in the custody of her mother until otherwise ordered by the court. To this judgment the respondent excepted.

*James R. Davis,* for plaintiff in error. *W. Y. Allen,* contra.

BECK, P. J. (After stating the foregoing facts.) While the evidence tending to show the fitness of the respondent for the custody of the minor involved in this controversy is quite strong, there is some evidence tending to show that the mother is also a fit person; and we cannot reach the conclusion under the evidence that the court abused his discretion in awarding the custody of the child to the petitioner. It is true that the mother and father had lived in a state of separation for quite a while before the father's death, and at the time of his decease a suit for divorce was pending; but no divorce had been granted. The minor whose custody is being considered here was more than fourteen years of age, and her father had appointed the respondent testamentary guardian. But that is not conclusive as against the mother. It is declared in the Civil Code, § 3022: "Upon the death of the father, the mother is entitled to the possession of the child until his arrival at such age that his education requires the guardian to take possession of him. In cases of separation of the parents, or the subsequent marriage of the survivor, the court, upon writ of habeas corpus, may exercise a discretion as to the possession of the child, looking solely to his interest and welfare." And if the law had remained unchanged by the act of 1913, dealing with the subject of the custody of minor children, which is embodied in section 3022 (a) of Park's Code, we might have concluded that under the provisions of section 3022 the minor in question here having reached the age of fifteen years, which is such an age that her "education requires the guardian to take

possession," the court should have awarded the custody of the minor to the guardian, clearly shown to be a fit person to have the custody. But the act of 1913 just referred to provides that "In all cases where the custody of any minor child or children is involved between the parents, there· shall be no prima facie right to the custody of such child or children in the father, but the court hearing such issue of custody may exercise its sound discretion, taking into. consideration all the circumstances of the case, as to whose custody such child or children shall be awarded, the duty of the court being in all such cases in exercising such discretion to look to and determine solely what is for the best interest of the child or children, and what will best promote their welfare and happiness, and make award accordingly." And while in terms this statute just quoted relates to cases between parents where the custody of a minor child is involved, it is not inapplicable in a case like this, between the mother and a testamentary guardian appointed by the deceased father. And giving the statute the effect it would have if the controversy over the custody of the child were between the father and the mother, the disposition of the child·under habeas-corpus proceedings rested in the sound discretion of the court; and under all the facts it is not made to appear that the discretion of the court was abused.

*Judgment affirmed. All the Justices concur.*